IN RE: LARRY WILLIAM ESTES, JR.

No. COA02-971

(Filed 6 May 2003)

**Termination of Parental Rights— failure to appoint guardian ad litem—mental illness**

The trial court erred by terminating respondent mother's parental rights without appointing a guardian ad litem under N.C.G.S. § 7B-1101 to represent respondent at the termination hearing where the petition or motion to terminate parental rights alleged, and the evidence supporting such allegation tended to show, that respondent was incapable of providing proper care and supervision to the child due to mental illness.

Appeal by respondent from order entered 27 September 2001 by Judge Julia Gullett in Iredell County District Court. Heard in the Court of Appeals 12 February 2003.

*Hall & Hall, Attorneys at Law, P.C., by Susan P. Hall, for respondent appellant.*

*Iredell County Department of Social Services, by Thomas R. Young, and Crosswhite, Edwards and Crosswhite, P.A., by Andrea Edwards, for petitioner appellee.*

TIMMONS-GOODSON, Judge.

Patricia Ann Howard Estes ("respondent") appeals from an order of the trial court terminating her parental rights as to Larry William Estes, Jr. ("the minor child"), born 26 July 1999. For the reasons stated herein, we reverse the order of the trial court.

The pertinent factual and procedural history of the instant appeal is as follows: On 11 May 2001, the Iredell County Department of Social Services ("DSS") filed a motion to terminate the parental rights of respondent, alleging that respondent had neglected her minor child, and that she was incapable of providing proper care and supervision for the minor child, such that the minor child was a dependent child within the meaning of the North Carolina General Statutes. In support of its allegations of neglect and dependency, DSS specifically alleged, *inter alia*, that: (1) respondent had been exhibiting irrational behavior and thought patterns prior to and following the birth of the minor child; (2) respondent had failed to provide appropriate care for

IN RE ESTES

[157 N.C. App. 513 (2003)]

her newborn child; (3) following an adjudication of neglect and dependency of the minor child, respondent was required to complete a psychological evaluation; (4) respondent exhibited irrational outbursts at visitations with her child; (5) respondent's behavior was such that she was incapable of caring for the minor child.

On 25 August 2001, the trial court held a termination hearing at which respondent was represented by counsel. The court did not appoint, however, a guardian ad litem for respondent. After hearing the evidence, the trial court made the following pertinent findings of fact:

10. The Department of Social Services initially filed a Juvenile Petition on 8/3/99, alleging that the Respondent Mother was exhibiting irrational behavior and thought patterns during the course of her pregnancy and delivery, to wit, that she failed to keep her pre-natal appointments due to the mother's perception she was being stalked, that the mother remained in the parking lot of the hospital after her water broke for two hours due to [there] being "trash" in the parking lot, that the mother stated she had a professed hatred of her other children and that she should have "killed the children when she had the chance," that she had fixated irrationally upon colors, objects, and numbers, and that the mother had to be prompted by hospital staff to properly care for her [newborn] child. The petition further alleged that the mother was diagnosed as suffering from paranoid schizophrenia . . . and that the mother had a history of mental illness including one occasion in which the mother had been confined to Broughton Hospital.

11. The minor child was adjudicated a dependent child on 8/20-26/99. A dispositional hearing was held on the same dates. Pursuant to court order, the Respondent Mother was to comply with the terms of her Family Services Case Plan, complete treatment recommended by Dr. Patricia Hill and obtain a psychological evaluation.

. . . .

13. In addition to a Psychological Evaluation requested by Department of Social Services, a Psychiatric Evaluation was undertaken at the Respondent Mother's request. The psychological evidence suggested that the diagnosis for the Respondent Mother's behavior was unclear.

14. Between 8/99 and 4/00, the Respondent Mother made some limited progress. However, the Mother sporadically made irrational outbursts during visitation and failed to follow through with recommended counseling and treatment. Further, on occasion she would sporadically miss visits, show up late or show up unannounced. At one point the Respondent Mother indicated to [DSS] that she was not going to work toward reunification any longer and that she wanted a final visit. Following this discussion, she stopped making regular contact with the agency. Further, the mother was additionally unable to consistently maintain stable housing, coming to live with friends and acquaintances who were never identified to the social worker so as to allow the worker to determine the appropriateness of the living quarters for the child.

Based on these findings, the trial court concluded that respondent had neglected her child and that she was "incapable of providing for the proper care and supervision of the minor child, such that the minor child is a dependent juvenile within the meaning of N.C.G.S. 7B-101." The trial court thereafter determined that it was in the best interests of the minor child that the parental rights of respondent be terminated and entered an order providing for such termination. From the order terminating her parental rights, respondent appeals.

The dispositive issue on appeal is whether the trial court could properly terminate respondent's parental rights without appointing a guardian ad litem to represent respondent at the termination hearing where the petition or motion to terminate parental rights alleged, and the evidence supporting such allegations tended to show, that respondent was incapable of providing proper care and supervision to the child due to mental illness. Because we conclude that section 7B-1101 requires the trial court to appoint a guardian ad litem in such instances, we reverse the order of the trial court.

Section 7B-1101 of the North Carolina General Statutes provides in pertinent part that

The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the age of the parent. The parent has the right to counsel and to appointed counsel in cases of indigency unless the parent waives the right. . . . In addition to the right to appointed counsel set forth above, a guardian ad litem *shall* be appointed in accordance with the provisions of G.S. 1A-1, Rule 17, to represent a parent in the following cases:

(1) Where it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6); or

(2) Where the parent is under the age of 18 years.

N.C. Gen. Stat. § 7B-1101 (2001) (emphasis added). Section 7B-1111(6) states that a trial court may terminate parental rights upon a finding

> That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, *mental illness*, organic brain syndrome, *or any other similar cause or condition.*

N.C. Gen. Stat. § 7B-1111(a)(6) (2001) (emphasis added). Dependent juveniles include those "whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2001).

In the instant case, the majority of the allegations contained in the motion to terminate respondent's parental rights centered on respondent's "irrational behavior and thought patterns." The neglect and dependency petition filed by DSS alleged that respondent "was diagnosed as suffering from paranoid schizophrenia" and "had a history of mental illness" requiring hospitalization. After the minor child was adjudicated neglected and dependent, respondent was ordered to complete a psychological evaluation. A review order by the trial court in this matter noted that DSS had been relieved of its obligation of attempting to reunify respondent and the minor child "due to [respondent's] long-term mental instability." At the hearing to terminate respondent's parental rights, DSS argued that respondent was incapable of properly caring for her child because of her "mental issues."

Despite the numerous allegations by DSS and findings by the trial court concerning respondent's mental instability, the trial court failed to appoint a guardian ad litem to represent respondent as required under section 7B-1101. The trial court therefore erred in proceeding to terminate respondent's parental rights without first appointing a guardian ad litem. Petitioner concedes that this was error, but argues

**IN RE ESTES**

[157 N.C. App. 513 (2003)]

that such error did not prejudice respondent, in that she was represented by counsel. Petitioner moreover argues that, as respondent did not request a guardian ad litem, she has failed to preserve this issue for appellate review. We disagree.

. In *In re Richard v. Michna*, 110 N.C. App. 817, 431 S.E.2d 485 (1993), this Court reversed the trial court's termination of the respondent mother's parental rights. The petitioner in *Richard* alleged and the trial court found, *inter alia*, that the respondent mother was incapable, because of mental retardation and other mental conditions, of proper care and supervision of her children. *See id.* at 821, 431 S.E.2d at 488. The respondent mother did not request a guardian ad litem, however, nor did she object to the failure to have one appointed at trial. "In short the issue was never presented at the trial court level." *Id.* This Court nevertheless held that the statutory language of section 7A-289.23, now codified as section 7B-1101, expressly mandated that a guardian ad litem be appointed in cases where it is alleged that a parent is " 'incapable as a result of mental retardation, mental illness, organic brain syndrome, or any other degenerative mental condition of providing for the proper care and supervision of the child.' " *Id.* (quoting N.C. Gen. Stat. § 7A-289.32(7)). The mandatory language of the statute relieved the respondent of her burden of requesting appointment of a guardian ad litem and excused her failure to object at trial. The Court further held that, although there was no evidence that the respondent had been prejudiced by the failure of the trial court to appoint a guardian ad litem, "the mandate of the statute must be observed, and a guardian ad litem must be appointed." *Id.* at 822, 431 S.E.2d at 488. The Court therefore reversed the order terminating the respondent's parental rights and remanded the case to the trial court for appointment of a guardian ad litem and a new trial.

Although the *Richard* decision was filed before implementation of the current Juvenile Code, its reasoning controls the outcome of the instant case. The language of section 7B-1101 requires that the trial court appoint a guardian ad litem where "it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6)." N.C. Gen. Stat. § 7B-1101. Section 7B-1111(6) permits termination of parental rights where a parent is incapable, due to mental illness or any other similar cause or condition, of providing proper care and supervision to his or her child. In the instant case, the allegations and evidence before the trial court tended to show that respondent was incapable of providing proper care to her minor child due to mental

illness. We hold that where, as here, the allegations contained in the petition or motion to terminate parental rights tend to show that the respondent is incapable of properly caring for his or her child because of mental illness, the trial court is required to appoint a guardian ad litem to represent the respondent at the termination hearing. We conclude that the trial court erred in failing to appoint a guardian ad litem for respondent, and we therefore reverse the order of the trial court terminating respondent's parental rights. We further remand this case for appointment of a guardian ad litem for respondent and for a new trial.

Reversed and remanded.

Judges WYNN and LEVINSON concur.